## ATLANTIC AND BIRMINGHAM RAILWAY COMPANY *v.* ATLANTIC COAST LINE RAILROAD COMPANY.

Under the facts and pleadings in the record, the court did not err in refusing the injunction.

Argued February 19,—Decided August 16, 1907.

Petition for injunction. Before Judge Parker. Glynn superior court. June 21, 1906.

The Atlantic and Birmingham Railway Company filed a petition for injunction against the Atlantic Coast Line Railroad Company, seeking to restrain the defendant from constructing and maintaining a spur-track leading from the defendant's main line of track on A street in the city of Brunswick to the planing-mill of Noble & Parker, which spur-track would cross plaintiff's main line on A street. It appears from the petition, that the defendant's track had been laid, and was in operation along A street at the time the petitioner acquired the right to lay its track parallel to defendant's line on the east side of said street; and in order to construct plaintiff's track along A street, it was necessary to remove defendant's line to the westward of its then existing location. At and prior to this time the defendant was maintaining a spur-track extending

from its main line eastward to the premises of the Standard Oil Co., and another spur-track leading from its main line eastward to the mill of Noble & Parker. On October 21, 1905, plaintiff and defendant entered into a contract, the material portions of which are as follows:

"The Birmingham Co. [plaintiff], desiring to extend its main line of track . . along the east side of A street, . . has made application unto the Atlantic Co. [defendant], to make such changes in the location of the tracks of the Atlantic Co. . . by moving the same westward, as will enable the Birmingham Co. to lay its tracks along A street without encroaching upon private property, and the Birmingham Co. has requested the Atlantic Co. to waive its objections to the location of its [the Birmingham Co.'s] tracks, . . offering as a consideration unto the Atlantic Co., for the change of its tracks it will have to make between L and C streets on A street, that it [the Birmingham Co.] will bear all expenses occasioned by such change of tracks of the Atlantic Co. . . and the Birmingham Co. further offering the Atlantic Co., as a consideration for the Atlantic Co. not pressing its objections to the extension, · . . to save and hold harmless, as hereinafter provided, the Atlantic Co. from any injury which may arise unto the Union Passenger Station property of the Atlantic Co. Now therefore, in consideration of the premises and of the covenants hereinafter contained on behalf of the Birmingham Co. running unto the Atlantic Co., the first and second parties have covenanted and agreed to and with each other as follows:" The first stipulation provides that the Birmingham Co. shall "so drain F street in the vicinity of the Union Passenger Station property as that the storm and other water, which, by the change of grade occasioned by the construction of the proposed tracks of the Birmingham Co., would otherwise flow upon said property, shall be carried off, . . so as not to drain into or accumulate upon the said Union Passenger Station property." The second stipulation provides that the Birmingham Co. shall bear the expense of removing the tracks of the Atlantic Co. to the west side of A street. The third and fourth provisions of the contract are as follows: "It is also understood and agreed that the second party shall construct, at the expense of the first party, a safe and proper rigid crossing over and across the sidetrack of the second party leading from its proposed main line on

A street to the property of the Standard Oil Co., so that the second party shall have hereafter, as now, permanent side-track connection into the property of the Standard Oil Co. for the benefit of said Standard Oil Co., for the benefit of said second party. It is further agreed that the map, or blue-print, hereto attached, identified by the signature of the Presidents of the respective parties to this contract, delineates the correct profile, location, and character of work to be done, and shall, where not otherwise herein specifically provided, govern in the doing of the things by the parties hereto agreed to be done and performed." The blue-print above referred to does not show the location of the Noble & Parker planing-mill, nor the spur-track leading thereto.

In its answer the defendant alleged that it had maintained a spur-track connecting its main line with the Noble & Parker planing-mill for four years prior to the execution of the above contract with the plaintiff, and that the plaintiff in the construction of its own line removed defendant's said spur-track without defendant's knowledge or consent, "and since then defendant has been unable to deliver to and receive freight from said planing-mill, . . and said spur-track can not be replaced without laying same across plaintiff's track, as defendant has the right to do and was undertaking to do when the restraining order was granted in this cause."

At the hearing the court passed an order denying the injunction prayed for, and dissolving the temporary restraining order previously granted. The plaintiff excepted.

*Crovatt & Whitfield* and *Rosser & Brandon,* for plaintiff.

*Bennet & Conyers,* for defendant.

BECK, J. (After stating the facts.) The contention of the plaintiff is, that the contract shows the unqualified intention of the parties to establish the new condition and nothing else upon A street, prescribed by the contract and by the blue-print attached to it as a part of it; that they show that the Standard Oil crossing and side-track were to be retained as a part of the new condition, and show and provide for no other crossing or side-track. If another existed prior to the making of the contract and was intended to be retained under the new condition, then the contract would have so provided, there being no contention that such a provision for the Noble & Parker crossing and side-track was omitted from the contract by fraud, accident, mistake, or at all. And it

is further contended that the intention of the parties to the contract, as appears by the recitals therein, was to provide for the relocation of the main-line track of the defendant upon A street by removing it to a point westward of its then location, so as to permit the entry upon that street of another railroad, namely that of the plaintiff, and the laying of its tracks and the operation of its trains along the eastern side of said street, and one thing more, to wit: the maintenance, under the changed conditions, of the connecting line then existing between the track of the defendant and the premises of the Standard Oil Co., so far as the contract speaks the intention of the parties.

The weakness of the argument submitted to sustain the contentions .of the plaintiff consists in the fact that the contract does not purport to deal generally with the subject of side or spur-tracks leading into or connecting with the main line of the defendant company. It deals only with the side-tracks or side-track, the crossing of which over the line of plaintiff's road should be constructed at the expense of the latter. Had the contract provided that the defendants should have a spur-track leading to its main line from the Standard Oil plant, generally and without reference to the question,as to the party upon whom the cost would fall of.constructing the crossing at the point where such spur-track intersected the plaintiff's line, then the contract would have dealt with a class in the sense that would have rendered applicable the rule invoked by plaintiffs, that, "The express mention of one act, contention, stipulation, class or number, person or place, implies the exclusion of another or others not mentioned. The maxim restrains what is implied by what is expressed; what is general, by what is particular and specific."

Except as to the crossing of plaintiff's road by the spur-tracks, when the expense of constructing and maintaining a rigid crossing was, by the terms of the contract, imposed upon the plaintiff, the right of the defendant company to have and maintain other spur-tracks then in existence across A street, as they existed at the time the contract was signed, is not controlled nor affected by it.

The court could well have decided, under the pleadings and facts in this record, that the undertaking, as set forth in this contract, upon .the part of the defendant was gratuitous, in which case it .should not, by the application of a highly technical rule of construc-

tion, have imported into the contract terms which are not expressly written there, and which are not necessarily implied from what is found in the face of that instrument. And apparently, from the pleadings and the evidence, the defendant here, as a matter of favor, gratuitously consented to a change in the location of its road so that plaintiff's track might be laid along the street in which defendant's track was already located. And unless constrained thereto by the terms of the contract bestowing this apparent gratuity, we will not read into the contract terms by which there will be imposed upon the party bestowing the favor the hardship of losing the right to maintain spur-tracks to its main line which had been in existence and use for years.

*Judgment affirmed. All the Justices concur.*